FILED
United States Court of Appeals
Tenth Circuit

January 24, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

RANDY CUMMINGS; CRUZ
GALLEGOS; ROBERT J. GARCIA;
RICHARD GONZALES; ELOY A.
JARAMILLO; DAVID
LARRANAGA; JOSEPH LOPEZ;
RICK LOPEZ; DAVID MONTANO;
ANGELO RINALDI; CHRIS
SWEENEY; JOSH TILLINGHAST;
TOMAS TRUJILLO; JEFFREY S.
WADE; JOSHUA HOSELTON;
CHARLES W. LEES; JAIME
MARQUEZ; ROBERT MENDOZA;
ARMANDO ANCHONDO;
GUSTAVO BERROSPE; REYES
CABRIALES; SERGIO ESCOBEDO;
JASON HEAD; NICK HINOJOS;
ROBERT G. HITZMAN; MICHAEL
LOPEZ; JOSE RODRIGUEZ;
SERGIO A. ROJO; RICHARD
TENORIO; CESAR TORRES;
GRANT WILLIS; HAROLD BROWN;
RENE CARRILLO; HENRY NEZ,
JR.; KURT JOHNSON; JESUS
AGUILAR-MURILLO; MARTIN F.
ALVAREZ; ARTHUR ARCHULETA;
ENRIQUE CORONA; RONALD
HUBBARD; ANDREW M. LUGO;
HENRY LUJAN; DAVID CARR; D.
JEREMIAH CORDOVA; KEVIN
CHARVEA; NATHAN ESPALIN;
LEVI GUTIERREZ; DENNIS
MOORE; ROBERT MORENO; LEVI
OLIVAS; THOMAS D. PAYNE;
BRYAN WHEELER, on behalf of
themselves and all others similarly

situated,

      Plaintiffs - Appellees/Cross-Appellants,

v.

JASON DEAN, as the Director of the Labor Relations Division of the New Mexico Department of Workforce Solutions, in his individual capacity,

      Defendant - Appellant/Cross-Appellee

and

CELINA BUSSEY, Secretary of the New Mexico Department of Workforce Solutions, in her individual capacity,

      Defendant/Cross-Appellee.

Nos. 17-2072 & 17-2079

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:16-CV-00951-JAP-KK)**

Thomas Bird, Keleher & McLeod, P.A., Albuquerque, New Mexico (Jason J. Lewis, Law Office of Jason J. Lewis, LLC, Albuquerque, New Mexico; Marshall J. Ray, Law Offices of Marshall J. Ray, LLC, Albuquerque, New Mexico; and Sean Olivas, Keleher & McLeod, P.A., Albuquerque, New Mexico, on the briefs), for Defendant - Appellant/Cross-Appellee and Defendant/Cross-Appellee.

Shane Youtz (James A. Montalbano and Stephen Curtice, with him on the briefs), Youtz & Valdez, P.C., Albuquerque, New Mexico, for Plaintiffs - Appellees /Cross-Appellants.

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.

2

**HOLMES**, Circuit Judge.

Jason Dean, director of the Labor Relations Division of the New Mexico Department of Workforce Solutions ("DWS"), raises this appeal from the district court's denial of qualified immunity against the claim that he violated Plaintiffs' constitutional rights to substantive due process by failing to issue prevailing rates for wages and fringe benefits as required by New Mexico law.

In the action below, Plaintiffs, individuals who worked on public works projects in New Mexico, filed claims under 42 U.S.C. § 1983 on behalf of themselves and others similarly situated, alleging that Director Dean and Celina Bussey, secretary of the DWS, violated Plaintiffs' procedural and substantive due-process rights by failing to determine prevailing rates for wages and fringe benefits in contravention of the New Mexico Public Works Minimum Wage Act ("Act"), N.M. STAT. ANN. § 13-4-11(B) (West 2009). Plaintiffs alleged that, as a result of this failure, from 2009 to 2015 they did not receive the rates to which they were entitled under the Act.

Defendants filed a motion to dismiss, claiming qualified immunity. The district court granted it in part and denied it in part. Specifically, the district court granted the motion in its entirety as to Secretary Bussey, and as to Plaintiffs' procedural due-process claim against Director Dean. However, the

3

court denied the motion with respect to Director Dean on Plaintiffs' substantive due-process claim.

Both parties now appeal from the district court's ruling. In Case No. 17-2072, Director Dean appeals from the court's denial of qualified immunity as to Plaintiffs' substantive due-process claim, while in Case No. 17-2079, Plaintiffs cross-appeal the district court's dismissal of (1) their claims against Secretary Bussey, and (2) their claim against Director Dean for violation of their procedural due-process rights.

For the reasons stated below, we **dismiss** Plaintiffs' cross-appeal, Case No. 17-2079, for lack of jurisdiction, and **reverse and remand** the district court's denial of qualified immunity as to Director Dean on Plaintiffs' substantive due-process claim in Case No. 17-2072.

**I**

We first present the state statutory context for Plaintiffs' claims and then review the relevant facts.

**A**

Every contract for public works in New Mexico in excess of $60,000—including those involving construction and demolition—is required to state the minimum wages and fringe benefits for all tradespeople that work on a particular project. The director of the Labor Relations Division of DWS ("the director") is tasked with publishing a schedule of minimum wages and fringe

4

benefits for such laborers and mechanics.  Generally, Plaintiffs are individuals who worked on public-works projects in New Mexico during the three years prior to the date of the filing of their lawsuit on August 23, 2016.

Prior to 2009, § 13-4-11(B) of the Act provided:

> [The director] shall conduct a continuing program for the obtaining and compiling of wage-rate information and shall encourage the voluntary submission of wage-rate data by contractors, contractors' associations, labor organizations, interested persons and public officers.  Before making a determination of wage rates for any project, the director shall give due regard to the information thus obtained.  Whenever the director deems that the data at hand are insufficient to make a wage determination, the director may have a field survey conducted for the purpose of obtaining sufficient information upon which to make [a] determination of wage rates.  Any interested person shall have the right to submit to the director written data, views and arguments why the wage determination should be changed.

N.M. STAT. ANN. § 13-4-11(B) (West 2005).  In 2009, § 13-4-11(B) of the Act was amended to state:

> The director shall determine prevailing wage rates and prevailing fringe benefit rates for respective classes of laborers and mechanics employed on public works projects at the same wage rates and fringe benefit rates used in collective bargaining agreements between labor organizations and their signatory employers that govern predominantly similar classes or classifications of laborers and mechanics for the locality of the public works project and the crafts involved; provided that:
>
> (1) if the prevailing wage rates and prevailing fringe benefit rates cannot reasonably and fairly be determined in a locality because no collective bargaining agreements exist, the director shall determine the prevailing wage rates and prevailing fringe benefit rates for the same or most similar

5

class or classification of laborer or mechanic in the nearest and most similar neighboring locality in which collective bargaining agreements exist;

(2) the director shall give due regard to information obtained during the director's determination of the prevailing wage rates and the prevailing fringe benefit rates made pursuant to this subsection;

(3) any interested person shall have the right to submit to the director written data, personal opinions and arguments supporting changes to the prevailing wage rate and prevailing fringe benefit rate determination; and

(4) prevailing wage rates and prevailing fringe benefit rates determined pursuant to the provisions of this section shall be compiled as official records and kept on file in the director's office and the records shall be updated in accordance with the applicable rates used in subsequent collective bargaining agreements.

N.M. STAT. ANN. § 13-4-11(B) (West 2009) [hereinafter "the 2009 Amendments"].

The 2009 Amendments had the primary effect of requiring the director to determine the prevailing rates based on the wage rates and fringe-benefit rates used in collective bargaining agreements ("CBAs"), as opposed to the earlier version of the statute's mandate to simply collect data for the "purpose of obtaining sufficient information upon which to make [a] determination of wage rates." N.M. STAT. ANN. § 13-4-11(B) (West 2005); *see also* Aplt.'s App. at 151–52 (Mem. Op. & Order, dated Apr. 20, 2017).

**B**

6

By April 2011—almost two years after the 2009 Amendments came into force—the director still had not set prevailing-wage rates according to the CBAs. The New Mexico Building and Construction Trades Council ("NMBCTC"), "an alliance of craft unions" that represent New Mexico public workers, *N.M. Bldg. & Constr. Trades Council v. Dean*, 353 P.3d 1212, 1214 (N.M. 2015), filed a Petition for Writ of Mandamus in the New Mexico Supreme Court requesting that the court compel the director to set prevailing wage and prevailing benefit rates in accordance with relevant CBAs. The New Mexico Supreme Court denied the writ, but did so on the basis of a representation by the DWS secretary's ("the secretary") counsel that the secretary would set new rates within four or five months. *See id.* (quoting counsel's statement during oral arguments in 2011: "I would say [setting the rates] could conceivably be done in four or five months, which I don't think is unreasonable, especially since the secretary has assured me, and I'm assuring the Court, that she's intent on getting this done. I don't think it requires a writ of mandamus to get it done. But, whatever the Court desires, I'm confident she'll get it done.").

Despite this assurance from the secretary's counsel, the secretary did not set new prevailing wage or prevailing benefit rates, even though in 2012 she oversaw the promulgation of new regulations and the amendment of others as required by the Act. *Id.* at 1214–15. The NMBCTC challenged these new regulations before the New Mexico Labor and Industrial Commission ("LIC").

7

Typically, a challenge to a new regulation filed with the LIC stays the implementation of that regulation pending resolution of the challenge, *see* N.M. CODE R. § 11.1.2.17(B)(1), but the NMBCTC requested that the LIC waive the automatic stay if necessary to allow the DWS to proceed with determining new prevailing rates:

> Pursuant to [N.M. CODE R. § 11.1.2.17(B)(1)], Appellant waives its right to stay the effectiveness of the new rules through the filing of this appeal as those rules relate to the determination of new prevailing rates to replace the rates currently in effect. . . . Appellant desires the Department to update the prevailing rates in some manner as soon as possible given that the current rates are based on 2009 data and have not been updated for more than two years. If necessary, Appellant requests the Commission to waive the automatic stay as herein described as well.

Aplt.'s App. at 106 (Ex. E, Notice of Appeal, dated Mar. 27, 2012). The LIC denied the NMBCTC's challenge, and the NMBCTC appealed that decision to the state district court. The LIC did not act to lift the automatic stay at any point during these proceedings.

While the appeal to the state district court was pending, and in light of the director's continued failure to determine updated rates, the NMBCTC filed a second Petition for Writ of Mandamus in the New Mexico Supreme Court in 2015. The NMBCTC again requested that the New Mexico Supreme Court order the director to determine the rates as required under the Act. The court this time granted the writ, stating:

8

> We hold that under the Act the Director has a mandatory, nondiscretionary duty to set the same prevailing wage and prevailing benefit rates as those negotiated in applicable CBAs and that the Director's failure to do so violates the Act. We therefore issue a writ of mandamus ordering the Director to comply with the Act and set rates in accordance with CBAs as required under the Act within thirty days of the issuance of this opinion.

*Dean*, 353 P.3d at 1214.

## C

Plaintiffs filed the present suit in federal court alleging that they suffered financial harm due to Defendants' failure to determine the prevailing rates in accordance with the 2009 Amendments. Specifically, they allege that the wages and benefits they received, which were based on the pre-2009 Amendment determinations, "were less than would have been received had Defendants issued prevailing wage rate and prevailing fringe benefit determinations in accordance with the . . . Act as amended in 2009." Aplt.'s App. at 44 (First Am. Compl., dated Aug. 23, 2016).

Pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), Defendants sought judgment on the pleadings with respect to Plaintiff's amended complaint—the operative complaint for our purposes—on qualified-immunity grounds. The district court granted the motion in its entirety with respect to Secretary Bussey since Plaintiffs had failed to allege the necessary "'affirmative link' demonstrating that Bussey authorized or approved of Dean's noncompliance

9

with the Act." Aplt.'s App. at 159 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1200–01 (10th Cir. 2010)).

The court then considered Plaintiffs' constitutional claims against Director Dean. With respect to the procedural due-process claim, the court first determined that Plaintiffs had a protected property interest in CBA-level rates under the Act, giving rise to restrictions on the director's discretion in determining prevailing rates. However, the court noted that "more is required—Plaintiffs must show that they were deprived of the [property] interest *without an adequate process* by which they could obtain review of the deprivation." *Id.* at 160 (emphasis added). The court then stated that Plaintiffs failed to establish that the processes available to challenge the director's inaction were constitutionally inadequate, in part because Plaintiffs did "not allege anywhere in the Complaint that they lacked the opportunity to challenge the 2009 rates used by the Director." *Id.* at 160–61. Accordingly, the court dismissed the procedural due-process claim against Director Dean.

The district court denied Defendants' motion to dismiss Plaintiffs' substantive due-process claim against Director Dean, however. The court reasoned that the failure to set new rates, despite the assurance provided by the secretary's counsel during oral arguments before the New Mexico Supreme Court, was sufficient to show that the director deliberately and arbitrarily deprived Plaintiffs of a protected property right. Furthermore, the court stated the director

10

violated clearly-established law by depriving Plaintiffs of the wages and benefits to which they were entitled under the Act. According to the court, Plaintiffs' right to CBA-based wages and benefits was clearly established *by the statute itself* given that the plain language of the 2009 Amendments was susceptible to only one reading—"that it guarantees that [the] minimum wage and benefit rates must be equivalent to the rates negotiated in CBAs." *Id.* at 166.

Director Dean appealed, and Plaintiffs cross-appealed the dismissal of their claims against Secretary Bussey and their procedural due-process claim against Director Dean.

## II

As in every matter, we must consider whether we have jurisdiction over all aspects of this appeal. *See Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1021 (10th Cir. 2014) ("It is our obligation always to be certain of our subject matter jurisdiction." (quoting *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1009 (10th Cir. 2008))).

### A

With respect to Director Dean's appeal in Case No. 17-2072, we exercise jurisdiction over the district court's denial of his qualified-immunity defense pursuant to 28 U.S.C. § 1291. *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) ("[T]his Court has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final

11

decision' within the meaning of § 1291."); *accord Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

**B**

Our jurisdiction to hear Plaintiffs' cross-appeal in Case No. 17-2079 is less clear. We ultimately conclude that we do not have jurisdiction to hear this appeal.

We normally lack jurisdiction over a partial dismissal of a complaint because such dismissals do not constitute final, appealable decisions under § 1291. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) ("Because the dismissal . . . adjudicated fewer than all the claims and liabilities of all the parties, it was not a final appealable order . . . ."). However, the discretionary doctrine of pendent appellate jurisdiction provides an exception to this rule, allowing us to exercise jurisdiction over an "otherwise nonfinal and nonappealable lower court decision that overlaps with an appealable decision." *Cox v. Glanz*, 800 F.3d 1231, 1255 (10th Cir. 2015) (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995)).

Our exercise of pendent jurisdiction is "*only* appropriate" in either of two scenarios: (1) "when 'the otherwise nonappealable decision is inextricably intertwined with the appealable decision,'" or (2) "where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1148 (10th

Cir. 2011) (quoting *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 915 (10th Cir. 2008)).

Plaintiffs face several obstacles in establishing pendent jurisdiction over their cross-appeal. First, the exercise of pendent jurisdiction is generally disfavored as applied to cases in which primary appellate jurisdiction is based on the denial of qualified immunity. *See Cox*, 800 F.3d at 1255; *accord Bryson v. Gonzales*, 534 F.3d 1282, 1285–86 (10th Cir. 2008). After all, the collateral order doctrine, used to appeal from denials of qualified immunity, "is premised on the ability to decide the qualified immunity issue 'in isolation from the remaining issues of the case,'" making it "hard to reconcile" with pendent jurisdiction. *Bryson*, 534 F.3d at 1285 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 529 n.10 (1985)).

Moreover, Plaintiffs' briefing does not adequately support their assertion that we may exercise pendent jurisdiction over their claims. And it is beyond peradventure that it is Plaintiffs' burden to make such a jurisdictional showing. *See, e.g.*, *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal."); *accord E.E.O.C. v. PJ Utah, LLC*, 822 F.3d 536, 542 n.7 (10th Cir. 2016). Their entire argument on this threshold matter consists of a single conclusory sentence found in, respectively, their opening and reply

13

briefs. *See* Pls.' Resp. Br. at 1 (contending that this court "could, and should,

assert pendent jurisdiction over [this] cross-appeal"); *accord* Pls.' Reply Br. at 1.[1]

Plaintiffs present no analysis or argument to support either acceptable basis for

granting relief—*viz.*, that their claims on cross-appeal are "inextricably

intertwined" with the director's appeal, or that consideration of their cross-appeal

is "necessary for a full assessment of the appealable issue." *Crowe & Dunlevy*,

640 F.3d at 1148 (quoting *Sevenoaks*, 545 F.3d at 915).[2] By providing us with

---

[1]    To avoid confusion in this consolidated appeal and cross-appeal, we refer to the parties' briefs as follows:

- Defendant/Appellant Jason Dean's Brief in Chief = Def.'s Opening Br.
- Appellees' Principal and Response Brief = Pls.' Resp. Br.
- Defendant/Appellant Jason Dean's and Defendant/Cross-Appellee's Response and Reply Brief = Defs.' Reply Br.
- Appellees' Reply Br. = Pls.' Reply Br.

[2]    Rather, Plaintiffs assert without analysis that this court "has pend[e]nt jurisdiction" over their claims in light of *Primas v. City of Oklahoma City*, 958 F.2d 1506 (10th Cir. 1992), a case involving a number of appeals relating to a civil-rights action brought by a former city employee against the city and city officials. Pls.' Reply Br. at 1. There, this court exercised pendent jurisdiction over a cross-appeal from an interlocutory appeal of a denial of qualified immunity, concluding that the pendent claim—an appeal from the district court's determination that the plaintiff did not have a property interest in continued employment with the city—involved issues that were "factually and legally intertwined with the [non-pendent] issues on appeal" that the city officials raised. *Primas*, 958 F.2d at 1512. To be sure, the cases that the *Primas* court relied upon in coming to this conclusion employed the aforementioned pendent-jurisdiction framework: they considered whether the appeals were inextricably intertwined or whether reviewing the pendent issue was required to adequately assess the appealable issue. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1320 (Fed. Cir. 1990); *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir. 1986). As such, by relying on *Primas*, Plaintiffs do point us in the direction of

(continued...)

14

bare assertions rather than analytical guidance, Plaintiffs effectively ask us to "make arguments for [them] that [they] did not make in [their appellate] briefs," which we "will not" do.[3] *Cox*, 800 F.3d at 1256 (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001)).

Finally, even were we to overlook Plaintiffs' failure to argue within the pendent-jurisdiction framework, we would conclude that their claims do not present either of the two scenarios where pendent jurisdiction may be appropriately exercised. With respect to Plaintiffs' appeal of the district court's dismissal of all claims against Secretary Bussey, the relevant question on appeal is whether Plaintiffs' amended complaint adequately identified an "affirmative link" between Secretary Bussey and the alleged deprivations in this case. Pls.' Resp. Br. at 26. It is manifest that this question is not "inextricably intertwined" with the appealable issue before us, i.e., whether Director Dean is entitled to qualified immunity as to Plaintiffs' substantive due-process claim. *Crowe & Dunlevy*, 640 F.3d at 1148 ("A pendent claim may be considered 'inextricably

---

[2](...continued)
the required analysis. But Plaintiffs do not actually apply that analysis to the facts of this case, and we will not do it for them.

[3] The director did not address pendent jurisdiction in his briefing. Unlike Plaintiffs' failure to argue within the pendent-jurisdiction framework, however, the director's "silence on the matter is of no moment," *Cox*, 800 F.3d at 1257 n.13, as we have an independent obligation to inquire into our own jurisdiction regardless of whether it is challenged, *see United States v. Battles*, 745 F.3d 436, 447 (10th Cir. 2014).

15

intertwined' only if it is 'coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well.'" (quoting *Moore*, 57 F.3d at 930)). Nor is appellate review of this question "necessary to ensure meaningful review," *id.* (quoting *Sevenoaks*, 545 F.3d at 915), of the issues presented in Director Dean's qualified-immunity appeal, as evidenced by our analysis of those issues, *infra*. *See Cox*, 800 F.3d at 1257 ("[W]e can undertake—indeed we *have* undertaken . . .—a meaningful analysis of Sheriff Glanz's appeal from the denial of qualified immunity (i.e., the non-pendent claim) without exercising pendent jurisdiction over the official-capacity claim."). As was the case in *Cox*, in resolving the non-pendent appeal, "we [are] not required to decide the core issues implicated" in this ostensibly pendent matter, leaving us with "grave doubt that there would be any appropriate basis for our exercise of pendent jurisdiction." *Id.*

Our jurisdiction over Plaintiffs' appeal from the dismissal of their procedural due-process claim against Director Dean proves to be a closer call, but our conclusion is the same. It is axiomatic that procedural and substantive due-process claims require distinct analyses, undermining the notion that this pendent claim and the appealable claim are inextricably intertwined or that we must review the procedural claim in order to adequately address the substantive due-process claim that is properly before us. *See Cleveland Bd. of Educ. v.*

16

*Loudermill*, 470 U.S. 532, 541 (1985) ("The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology."); *Brown*, 662 F.3d at 1172 (noting that a judicial decision in "a procedural due process case . . . cannot support a clearly established *substantive* due process right" (citation omitted)); *Brown*, 662 F.3d at 1172 n.16 ("Insofar as Mr. Brown claims a substantive due process violation based on Officer Montoya's placing him in the sex offender probation unit and directing him to register as a sex offender *without a hearing*, Mr. Brown confuses substantive due process with procedural due process."); *United States v. Deters*, 143 F.3d 577, 582 (10th Cir. 1998) ("Unlike procedural due process, substantive due process protects a small number of 'fundamental rights' from government interference regardless of the procedures used."); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015) ("The Supreme Court has interpreted this language [i.e., of the Due Process Clause] as guaranteeing not only certain procedures when a deprivation of an enumerated right takes place (procedural due process), but also as guaranteeing certain deprivations won't take place without a sufficient justification (substantive due process)."); [*Wesley*] *Brown v. Cooke*, 362 F. App'x 897, 899 (10th Cir. 2010) (unpublished) ("[T]he district court did not specifically state in

17

its opinion and order whether it considered a procedural due process claim, a substantive due process claim, or both. This omission is relevant because the court appeared to inject the more demanding 'fundamental rights and liberties' analysis from the substantive due process sphere into the 'liberty interest' analysis that pertains to the procedural due process inquiry.").

And though there is often some overlap between the two analyses when substantive and procedural due-process claims are raised together based on the same facts, *see Becker v. Kroll*, 494 F.3d 904, 918 n.8 (10th Cir. 2007) ("Though it is sometimes helpful, as a matter of doctrine, to distinguish between substantive and procedural due process, the two concepts are not mutually exclusive, and their protections often overlap." (quoting *Albright v. Oliver*, 510 U.S. 266, 301 (1994) (Stevens, J. dissenting))), the issues here are quite distinct: Plaintiffs' pendent action challenges the district court's conclusion that there were adequate procedural protections that Plaintiffs failed to invoke, whereas the non-pendent appeal challenges the court's finding that the director's actions shocked the conscience and violated clearly-established federal law. These considerations are not inextricably intertwined, and review of the pendent action is not required for a meaningful analysis of the non-pendent appeal. Indeed, the district court's analysis and even the parties' briefing treat the two issues without overlap. *See* Aplt.'s App. at 159–66; *cf. Cox*, 800 F.3d at 1257.

Thus, given our general disfavor of pendent jurisdiction in the qualified-immunity context, *see Bryson*, 534 F.3d at 1285–86, Plaintiffs' dereliction of their burden to establish our jurisdiction over their cross-appeal, and our conclusion that neither of the two accepted rationales for exercising pendent jurisdiction are present here, we decline to exercise pendent jurisdiction over Plaintiffs' cross-appeal. We consequently dismiss Plaintiffs' cross-appeal in Case No. 17-2079 for lack of jurisdiction.

## III

We next turn to the issue properly before us on appeal: whether the district court erred in denying Director Dean qualified immunity against Plaintiffs' substantive due-process claim. We first lay out the familiar motion-to-dismiss and qualified-immunity standards of review before concluding that the district court erred in denying Director Dean's qualified-immunity defense. More specifically, we hold that the Plaintiffs have failed to carry their burden of showing that Director Dean's actions violated clearly-established federal law.

### A

#### 1

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *accord Jacobsen v. Deseret*

19

*Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002). Therefore, we review de novo the district court's denial of Director Dean's motion asserting a qualified-immunity defense. *See, e.g.*, *Brokers' Choice of America Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1102 (10th Cir. 2017) (noting that "we use the same de novo standard of review" in reviewing a district court's ruling on Rule 12(c) and Rule 12)(b)(6)); *Brown*, 662 F.3d at 1162 ("We review the district court's denial of a motion to dismiss based on qualified immunity de novo." (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004))); *Ramirez v. Dep't of Corrs., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (reviewing de novo a district court's denial of a Rule 12(c) motion based on qualified immunity), *abrogated on other grounds by Crawford-El v. Britton*, 523 U.S. 574 (1988), *as recognized by Currier v. Doran*, 242 F.3d 905, 912, 916 (10th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, we "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most

20

favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

**2**

The qualified-immunity doctrine protects public employees from both liability and "from the burdens of litigation" arising from their exercise of discretion. *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013); *see Elder v. Holloway*, 510 U.S. 510, 514 (1994) ("The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982))). When a defendant raises the qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" *at the time of the challenged conduct*.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *accord Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013).

We may address the two prongs of the qualified-immunity analysis in either order: "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 2151

(2017). Here, our analysis focuses on the clearly-established-law prong, and we conclude that Plaintiffs have failed to demonstrate that Director Dean violated their clearly-established rights; consequently, Director Dean prevails on his qualified-immunity defense. Because we need not do so, we do not reach the first prong of the qualified-immunity standard—that is, whether Director Dean's conduct in failing to set prevailing rates actually violated Plaintiffs' substantive due-process rights.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, --- U.S. ----, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Ordinarily, "[a] plaintiff may satisfy this [clearly-established-law] standard by identifying an on-point Supreme Court or published Tenth Circuit decision [that establishes the unlawfulness of the defendant's conduct]; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn*, 780 F.3d at 1005 (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)); *accord A.M.*, 830 F.3d at 1135; *Cox*, 800 F.3d at 1247. As the Supreme Court has instructed, this "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question [regarding the illegality of the defendant's conduct] beyond debate." *al-Kidd*, 563 U.S. at 741; *see Estate of B.I.C. v. Gillen*, 761 F.3d

22

1099, 1106 (10th Cir. 2014) ("Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the 'plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" (quoting *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000))).  In this vein, the Court has "repeatedly told [lower] courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742 (citation omitted); *accord Mullenix*, 136 S. Ct. at 308. "[D]oing so avoids the crucial question [of] whether the official acted reasonably in the *particular* circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (emphasis added); *accord Estate of B.I.C.*, 761 F.3d at 1106. In this connection, it bears underscoring that the federal right allegedly violated must have been "clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

In furthering the protective aims of qualified immunity, it is important that courts be especially sensitive to the need to ensure "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited," *Estate of B.I.C.*, 761 F.3d at 1106 (quoting *Trotter*, 219 F.3d at 1184)), where the legal standards of liability under the prior law are broad and general or depend on a balancing of discrete and sometimes opposing interests.  *See Mullenix*, 136 S. Ct. at 308 (holding that

23

"specificity [in defining clearly-established law] is especially important in the Fourth Amendment context" because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts" (second alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009), *as recognized by Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1183 (10th Cir. 2009))); *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) ("In the Fourth Amendment context, 'the result depends very much on the facts of each case,' and the precedents must 'squarely govern' the present case [to constitute clearly-established law]." (quoting *Mullenix*, 136 S. Ct. at 309)); *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (addressing a substantive due-process claim and stating that "allegations of constitutional violations that require courts to balance competing interests may make it more difficult to find the law 'clearly established' when assessing claims of qualified immunity"), *overruled in part on other grounds by County of Sacramento v. Lewis*, 523 U.S. 833 (1998), *as recognized by Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012); *Melton v. City of Oklahoma City*, 879 F.2d 706, 729 (10th Cir. 1989) (addressing a retaliatory-discharge claim under the First Amendment, and noting that, "because a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate, it follows that where . . . balancing is required, the law is less likely to be well established than in other

24

cases"), *modified on other grounds on reh'g*, 928 F.2d 920 (10th Cir. 1991) (en banc). The legal standard governing liability under the rubric of substantive due process evinces these attributes.

Specifically, the standard for liability for a violation of a person's substantive due-process rights is broad and general. *See Washington v. Glucksberg*, 521 U.S. 702, 722 (1997) (stating that the rights protected under substantive due process have "never [been] fully clarified, to be sure, and perhaps [are] not capable of being fully clarified"); *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (describing substantive due process as an "unchartered area" in which the "guideposts for responsible decisionmaking . . . are scarce and open-ended"). Furthermore and relatedly, consideration of whether a person's substantive due-process rights have been infringed "requires a 'balancing [of the person's constitutionally protected] interests against the relevant state interests.'" *J.B. v. Washington Cty.*, 127 F.3d 919, 927 (10th Cir. 1997) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)).

Thus, in our assessment here of whether Director Dean's conduct violated Plaintiffs' clearly-established substantive due-process rights, we must be especially sensitive to whether existing relevant precedents at the time he acted "squarely govern[ed]," *Mullenix*, 136 S. Ct. at 310, "the *particular* circumstances that he . . . faced," *Plumhoff*, 572 U.S. at 779 (emphasis added), and demonstrated

that the "violative nature of the *particular conduct* is clearly established."

*Aldaba*, 844 F.3d at 877 (quoting *Mullenix*, 136 S. Ct. at 308).

**B**

Director Dean challenges the district court's conclusion as to both prongs of the qualified-immunity analysis, i.e., that he violated Plaintiffs' substantive due-process rights and that he did so in violation of clearly-established federal law. We agree with Director Dean that he did not violate clearly-established federal law and thus conclude that he is entitled to the defense of qualified immunity. However, we first address Plaintiffs' argument that the qualified-immunity defense is unavailable because Director Dean's obligation to set CBA-based rates was a ministerial duty, rather than a discretionary function of his position.

**1**

Qualified immunity only shields an official in the exercise of his or her discretion. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("Under the qualified immunity doctrine, 'government officials performing *discretionary functions*, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [*federal*] statutory or constitutional rights of which a reasonable person would have known.'" (alteration in original) (emphasis added) (quoting *Harlow*, 457 U.S. at 818)).

26

Plaintiffs contend that Director Dean's duty to issue new prevailing rates for wages and fringe benefits pursuant to the Act was nondiscretionary, rendering qualified immunity inapplicable here. For support, they rely primarily on the New Mexico Supreme Court's statement in *Dean* that "under the Act, specifically Section 13-4-11, the Director has a mandatory, nondiscretionary duty to set prevailing wage and prevailing benefit rates the same as those negotiated in applicable CBAs." 353 P.3d at 1218. Director Dean responds that his duty was in fact discretionary because it involved interpreting the Act.

We agree with Director Dean that his duty to publish prevailing rates involved substantial discretion as that term applies in the federal qualified-immunity context, and that he therefore may avail himself of the qualified-immunity defense. Director Dean's implementation of the Act required him to interpret the language of a state statute. And although the New Mexico Supreme Court eventually held that Defendants' interpretation was contrary to the 2009 Amendments, *see Dean*, 353 P.3d at 1218, interpretation of state law is exactly the kind of discretionary function for which the qualified-immunity defense against federal liability applies.

The Supreme Court made this clear in *Davis v. Scherer*, 468 U.S. 183 (1984), where it reversed the district court's denial of qualified immunity based upon a finding that the defendants had violated a clear mandate of state law in terminating plaintiff's employment without following certain pretermination

27

procedures. *Id.* at 193. The Court proceeded to craft a narrow scope for the "ministerial duty" exception to qualified immunity. *Id.* at 196 n.14. The Court explained that a law that "fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." *Id.* Thus, the *Davis* Court reasoned, even assuming that the defendants had "ignored a clear legal command" to follow various pre-termination procedures before ending the plaintiff's employment, this duty was discretionary given that the state regulation in question left to them to interpret various terms contained in those pretermination procedures, including "a complete investigation" and a "thorough study of all information." *Id.* These indefinite terms provided the defendants with a "substantial measure of discretion" and thus allowed them to exercise authority that is discretionary, rather than ministerial. *Id.*

Similarly, the Act left to Director Dean a substantial measure of discretion in interpreting its terms. The Act requires the director to establish prevailing rates "at the same wage rates and fringe benefit rates used in collective bargaining agreements," but leaves to the director substantial discretion to determine the method of collecting and aggregating data, *and*, perhaps most importantly for our present inquiry, the timetable for doing so. N.M. STAT. § 13-4-11(B) (West 2009).

Notably, Plaintiffs fail to cite any caselaw addressing federal qualified immunity that would support a contrary result. And though the New Mexico Supreme Court held that "the Director has a mandatory, nondiscretionary duty to set the same prevailing wage and prevailing benefit rates as those negotiated in applicable CBAs," *Dean*, 353 P.3d at 1214, the analytical context of the state court's description of Director Dean's duty as "mandatory" and "nondiscretionary" is important. The court's description relates to the availability of mandamus relief under New Mexico law. *Id.* at 1214. While we ordinarily defer to a state court's interpretation of a state statute, *see United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) ("It is axiomatic that state courts are the final arbiters of state law."), the issue before us concerns not whether mandamus is available under New Mexico law, but whether qualified immunity bars liability under *federal* law. We therefore apply a federal standard to determine whether Director Dean's obligations were sufficiently discretionary to warrant the protections of the qualified-immunity defense under federal law, and we conclude that the United States Supreme Court's language in *Davis* compels our conclusion that such protections are available here.

Director Dean's interpretation and implementation of the Act were therefore matters within his discretion, and he is protected from liability under § 1983 unless his conduct violated clearly-established federal law.

**2**

29

Turning finally to the issue of whether Director Dean is entitled to qualified immunity under the circumstances giving rise to this § 1983 suit, we conclude that his actions did not violate clearly-established federal law. Specifically, we conclude that Plaintiffs have failed to meet the second prong of the qualified-immunity analysis—i.e., Plaintiffs have failed to identify clearly-established law that would have put Director Dean on notice that his conduct would give rise to liability under federal law—and thus we need not reach the first prong of the qualified-immunity analysis, i.e., whether Director Dean's conduct in fact violated Plaintiffs' rights to substantive due process. *See A.M.*, 830 F.3d at 1134–35.

The district court denied qualified immunity based upon a finding that "the Act clearly and unambiguously required the Director to set prevailing wage rates according to CBAs." Aplt.'s App. at 165. Plaintiffs rely on this reasoning and urge us to affirm.

But the district court's reasoning is flawed because it equates a violation of a clear obligation under *state* law[4] with a violation of clearly-established *federal*

---

[4] Director Dean argues, in his opening brief, that he followed a "normal process" by refraining from implementing the Act during the pendency of the challenge before the LIC. Def.'s Opening Br. at 27. In a single sentence, he argues that "state law was ambiguous at the time," given that an appeal to the LIC typically activates an automatic stay, N.M. CODE R. § 11.1.2.17(B)(1), and the LIC never acted to lift the stay despite the NMBCTC's request to waive the stay. *See* Def.'s Opening Br. at 27–28.

(continued...)

30

law.  Whether Director Dean violated clearly-established state law in failing to set CBA-based rates, however, is an entirely separate question from whether that failure violated clearly-established federal law.  And even if Director Dean had notice that his reading of the Act was incorrect as a matter of *state* law, this would not necessarily deprive him of qualified immunity from liability under *federal* law.  *See Davis*, 468 U.S. at 194 ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision [of state law]."); *Stanley v. Gallegos*, 852 F.3d 1210, 1224 (10th Cir. 2017) (Holmes, J., concurring in the judgment) (noting that *Davis* forecloses the argument that "if an official acts outside of his scope of authority, as defined by clearly established *state* law, he 'forfeits' his right to have a federal court in a § 1983 action consider the merits of his defense that his actions did not violate clearly established *federal* law"); *cf.*

---

[4](...continued)

However, during oral arguments before this court, Director Dean's counsel conceded that there was no confusion regarding the director's state-law obligations—irrespective of whether a stay was in effect—once the secretary's counsel represented to the New Mexico Supreme Court that DWS would update the prevailing rates.  Thus, we deem any argument that the director's obligation under state law was ambiguous as either waived due to inadequate briefing on appeal or abandoned by counsel's affirmative admission during oral argument, *see United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011); *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272–73 (10th Cir. 2007), at least insofar as the argument bears upon the clearly-established-law prong of the qualified-immunity analysis—*viz.*, insofar as any ambiguity might have supported the idea that a reasonable state official in Director Dean's position would not have been on fair notice of a violation of federal law.

31

*Dahn v. Amedei*, 867 F.3d 1178, 1189 (10th Cir. 2017) (reversing denial of qualified immunity upon finding no violation of clearly-established federal law, but noting that Defendants' conduct could "very well expose them to tort liability" under state law).

Neither the district court nor Plaintiffs have identified any case from the Supreme Court or this court finding a defendant liable under federal law in factually similar circumstances, i.e., where a public official in the same or similar position as Director Dean was held liable under federal law for failing to set rates for wages and fringe benefits (or for similar items) in apparent contravention of state law that required him to do so. Given that Plaintiffs bear the burden of presenting such a case to overcome qualified immunity, *see Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016), this failure proves fatal to their position.

Instead, Plaintiffs cite two factually inapposite cases in arguing that the Act created a clearly-established right for purposes of qualified immunity by virtue of its "clear and unambiguous" description of Director Dean's duties. These cases, however, do not speak to the legal issue present here and are without controlling force in this circuit.

The first is *Gardner v. Williams*, 56 F. App'x 700 (6th Cir. 2003) (unpublished). Plaintiffs' reliance on *Gardner* is patently misguided. To begin, it is notable that *Gardner* is an out-of-circuit *unpublished* decision; even assuming that such a decision is entitled to any consideration at all in the clearly-

32

established-law analysis, that consideration would be minimal. *See Morris*, 672 F.3d at 1197 n.5 (observing that "a single unpublished district court opinion is not sufficient to render the law clearly established," but, in discussing "unpublished cases from *this* court," noting that "we have never held that a district court must ignore unpublished opinions in deciding whether the law is clearly established"); *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (noting, in the context of discussing the import of an unpublished Tenth Circuit decision, that "[a]n unpublished opinion, . . . even if the facts were closer, provides little support for the notion that the law is clearly established"); *cf. Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (acknowledging the "little support" holding of *Mecham* but noting that, on the other hand, "an unpublished opinion can be quite relevant in showing that the law was *not* clearly established," specifically when "the same alleged victim and same defendant conduct are involved").

Furthermore, even focusing on the merits, *Gardner* lends Plaintiffs little succor. There, a panel of the Sixth Circuit concluded that a state trooper had violated an individual's clearly-established Fourth Amendment rights by arresting him without probable cause given that it was "unambiguous and not reasonably open to an alternative interpretation" that the state statutes used to justify the arrest were inapplicable. 56 F. App'x at 704. First of all, *Gardner* is patently distinguishable because there it was undisputed that effecting an arrest without probable cause would constitute a violation of Fourth Amendment Rights. In

33

contrast, here it is disputed that Director Dean's failure to determine prevailing rates constituted any violation of *federal* rights. More fundamentally, *Gardner* simply highlights in unremarkable fashion the "inevitable importance" in certain legal settings of state law to our assessment of whether the plaintiff may "show a violation of his *federal* rights." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases. But the precise scope of that right uniquely depends on the contours of a state's substantive criminal law" where, as in *Gardner*, the issue is whether the law enforcement officer "had probable cause based on a state criminal statute." *Id.* at 1300–01 (citation omitted) (citing *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008)). "[H]owever, we underscore that—even when it is essential to discern the content of state law—the rights being vindicated through § 1983 are federal." *A.M.*, 830 F.3d at 1141. *Gardner* does not purport to alter this federal-law focus of § 1983 liability. Nor does *Gardner* suggest that state-law violations play a similarly significant role in the context of substantive due-process violations, much less clearly establish that Director Dean's alleged violation of clearly-established state law in failing to set CBA-based rates would effect a violation of substantive due process. Thus, Plaintiffs' reliance on *Gardner* is unavailing.

34

The second case Plaintiffs cite is *Brooks v. George County*, 84 F.3d 157 (5th Cir. 1996). *Brooks*, however, is inapposite. There, the Fifth Circuit denied qualified immunity to a sheriff that had failed to meet his obligation under state law to keep records that were to be used to pay pretrial detainees. *Id.* at 164–65. But the Fifth Circuit's decision to deny qualified immunity there rested entirely on its determination, based on a reading of the state statute in question, that the sheriff's duty was non-discretionary. *Id.* However, as stated *supra*, we have determined that Director Dean's duties under the 2009 Amendments were in fact discretionary for purposes of qualified immunity under federal law. Therefore, *Brooks* does not help Plaintiffs either.

Because Plaintiffs have offered no authority clearly establishing that Director Dean violated their substantive due-process rights under *federal* law by failing to discharge his state-law obligation under the Act to publish CBA-based rates for wages and fringe benefits, we conclude that Director Dean is entitled to qualified immunity.[5]

**IV**

---

[5] Since our inquiry here solely concerned whether Director Dean violated clearly-established *federal* law for purposes of determining whether he is entitled to qualified immunity from liability under federal law, *see Davis*, 468 U.S. at 194, we have no occasion to question the New Mexico Supreme Court's reading of the 2009 Amendments, or to decide whether Director Dean's conduct in fact violated state law. Our opinion thus does not preclude Plaintiffs from seeking any available relief for Defendants' purported violations of New Mexico law in state court.

For the reasons discussed above, we **DISMISS** Plaintiffs' appeal of the grant of qualified immunity in Case No. 17-2079 for lack of jurisdiction, and we **REVERSE** the district court's judgment in Case No. 17-2072 and **REMAND** the case and instruct the court to grant Director Dean qualified immunity with respect to Plaintiffs' substantive due-process claim.