**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 13, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

SUZY DENNIS,

    Plaintiff - Appellee,

v.

PAUL PAZEN, in his individual capacity,

    Defendant - Appellant,

and

CITY AND COUNTY OF DENVER, COLORADO; CITY OF ARVADA; CITY OF GOLDEN; ANTHONY BROWN, in his individual capacity; GEOFFREY VOGEL, in his individual capacity; NATHANIEL NEDIG, in his individual capacity; TIMOTHY STEGINK, in his individual capacity; MICHAEL PITTON, in his individual capacity; ANTHONY HAMILTON, in his individual capacity; JORDAN BYBEE, in his individual capacity; RYAN COLLEY, in his individual capacity; DEAN MORETTI, in his individual capacity; JEFF SHRADER, in his official capacity,

    Defendants.

No. 23-1313
(D.C. Nos. 1:22-CV-00608-WJM-KAS &
1:22-CV-1358-WJM-KAS)

(D. Colo)

_____

## ORDER AND JUDGMENT[*]

_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HOLMES**, Chief Judge, **MATHESON**, and **EID**, Circuit Judges.

_____

In the evening hours of May 31, 2020, a projectile struck Suzy Dennis as she filmed a protest on Colfax Avenue in Denver, Colorado.  Unsure who had fired the projectile, Dennis sued several law enforcement officers, the City and County of Denver, the City of Arvada, and the City of Golden under 42 U.S.C. § 1983, alleging a First Amendment violation, a Fourth Amendment violation, and a Fourteenth Amendment violation.  The district court dismissed most of Dennis's claims, but denied then-Chief of Police Paul Pazen's motion to dismiss Dennis's Fourth Amendment excessive force claim against him based on qualified immunity.

Pazen appeals, arguing Dennis cannot show he violated her clearly established constitutional rights.  We agree.  Because Dennis has not identified an on-point Supreme Court or Tenth Circuit decision that would have notified a reasonable officer in Pazen's supervisory role that his conduct was unlawful, we reverse the district court's denial of Pazen's motion to dismiss and hold he is entitled to qualified immunity for his supervisory conduct.

**I.**

Following the murder of George Floyd in 2020, millions of Americans gathered in cities across the country to protest.  After a string of large protests in Denver, the City instituted a curfew prohibiting persons from accessing public areas between 8:00 P.M. and 5:00 A.M. from May 30 through June 5, 2020, with limited

2

exceptions. Dennis claims law enforcement generally enforced the curfew only against protesters.

Pazen, then Chief of the Denver Police Department, was tasked with managing the protests. Pazen appointed an incident commander to assume primary command responsibilities, to direct officer resources, and to approve the use of force when necessary. Officers from several other municipalities in the Denver metropolitan area also assisted with crowd control at the protests. All officers were authorized to use "less-lethal" weapons—including flashbang grenades, tear gas, and guns that fired rubber bullets—to manage the protesters who remained after curfew.

At approximately 8:30 P.M. on May 31, 2020, Dennis joined and began filming the protesters. Several minutes later, law enforcement threw flashbang grenades, sprayed tear gas, and fired rubber bullets to disperse the crowd. A projectile struck Dennis's right hand, causing severe injury to her index finger. Pazen claims, and Dennis does not dispute, that he was not present at the protest on the evening she was injured.

Dennis sued several law enforcement officers, the City and County of Denver, the City of Arvada, and the City of Golden under 42 U.S.C. § 1983, alleging violations of the First, Fourth, and Fourteenth Amendments. The district court dismissed most of Dennis's claims, concluding they were "woefully inadequate" because they did not "explain [which defendant] did what to her." Aplt. App'x at 55–56 (noting Dennis's concession that she "cannot (at this stage of the litigation) identify the specific officer or officers [who] shot her" (citation omitted)). But it

3

denied Pazen's motion to dismiss Dennis's excessive force claim against him,

reasoning:

> [Pazen] "opened a command post" to address protest activity, "command[ed]" the selective enforcement of the curfew, "publicly praised" law enforcement officers for their "tremendous restraint," and authorized the use of less-lethal weapons "to control and suppress protesters" through his "command."

*Id.* at 61 (citations omitted).  Based on these supervisory actions, the court concluded

Dennis's allegations were "just enough to plausibly allege that [the] policies

implemented by Pazen caused [Dennis's] injuries."  *Id.*  It further concluded that

Pazen was not entitled to qualified immunity, reasoning (1) Dennis "easily" pleaded a

Fourth Amendment violation because she alleged she was acting peacefully and did

not attempt to evade arrest, and (2) our decisions in *Fogarty v. Gallegos*, 523 F.3d

1147 (10th Cir. 2008), and *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir.

2008), placed Pazen on notice that his supervisory conduct was unlawful under the

circumstances.

Pazen timely appealed, arguing the facts alleged in Dennis's complaint were

insufficient to overcome his qualified immunity defense.

## II.

"We review de novo the district court's denial of a motion to dismiss based on

qualified immunity."  *Apocada v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Cummings v.

Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation omitted).  "In making this

4

assessment, we . . . view [all] allegations in the light most favorable to the plaintiff." *Id.* (quotation and internal quotation marks omitted).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation and internal quotation marks omitted). "Qualified immunity balances two important interests—[1] the need to hold public officials accountable when they exercise power irresponsibly and [2] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quotation omitted).

When a defendant properly asserts the qualified immunity defense, the burden shifts to the plaintiff "to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (quotation omitted). "The plaintiff must satisfy both prongs to overcome a qualified immunity defense." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757–58 (10th Cir. 2021) (quotation omitted). We have discretion to determine which prong to address first. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

Here, we consider first the clearly established prong of Pazen's qualified immunity defense. "[T]o satisfy [this] part of the qualified-immunity test in the

5

context of [a] supervisory-liability claim . . . [a plaintiff] must show that . . . clearly established law [would] have put a reasonable official in [the supervisor's] position on notice that his *supervisory conduct* would violate [the plaintiff's] constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quotation and internal quotation marks omitted). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quotation omitted).

Dennis argues our decisions in *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), and *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), satisfy this requirement. We disagree. As we describe, both *Fogarty* and *Buck* apply to this case only "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotation omitted). Accordingly, neither *Fogarty* nor *Buck* "provided fair warning to [Pazen] that [his supervisory conduct] was unconstitutional," and he is entitled to qualified immunity. *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quotation and internal quotation marks omitted).

In *Fogarty*, a large group gathered at a university to protest the war in Iraq. 523 F.3d at 1150. When the protesters' drum circle made it difficult for law enforcement officers to communicate, the police captain ordered the officers to "remove the drums." *Id.* at 1151–52. The officers understood this statement as an order to arrest the drummers. *Id.* at 1152. As the drummers dispersed, the officers

6

fired a projectile at a protester who was kneeling near the campus bookstore. *Id.* They then forced the protester to the ground and exposed him to tear gas, causing injury to his wrist and lungs. *Id.* The protester sued, and the captain asserted qualified immunity for his supervisory actions. *Id.* The Court rejected the captain's defense, noting that he personally supervised the officers at the protest, directed the officers to arrest the protester, and ordered the officers to deploy the tear gas. *Id.* at 1162–64. This "set[] in motion a series of acts by others . . . , which [the captain] knew or reasonably should have known, would cause others to inflict the constitutional injury." *Id.* at 1164 (quotation omitted).

*Buck* arose out of the same protest. 549 F.3d at 1274. In that case, another group of protesters sued the police captain for directing officers to use excessive force to manage the protest. *Id.* The Court again rejected the captain's qualified immunity arguments, noting he was the "on-the-scene supervisor," was personally involved in the plaintiffs' arrests, and "held a tight rein on his officers' actions" throughout the demonstration. *Id.* at 1288. It further reasoned that the police captain "acted as the incident commander in charge" and "expected his officers to take action only when in receipt of a specific directive from him," further demonstrating his control over the response to the protest. *Id.* at 1275; *see id.* at 1291 (noting that the captain "did not want his officers to act independently. He contacted his officers through radio, hand signal, and direct verbal command. He deployed chemical munitions . . . [,] directed the arrest of several protesters[,] and encouraged the arrests of others").

We agree with Pazen that *Fogarty* and *Buck* are plainly distinguishable from this case. Unlike the police captain in *Fogarty* and *Buck*, Pazen was not physically present at the protest on the night Dennis was injured. Nor did he directly supervise the response to the protest. Instead, he appointed an incident commander to assume primary command responsibilities, to direct officer resources, and to approve the use of force when necessary. Further, unlike the police captain in *Fogarty* and *Buck*, who directed the officers to arrest specific protesters and deployed less-lethal munitions himself, Pazen's authorizations to arrest and use force were made only in the abstract and from a distance. Dennis has not plausibly alleged that Pazen ordered, directed, or even knew of the deployment of a nonlethal projectile against her.[1]

Based on these material factual differences, we conclude Dennis's analogy to *Fogarty* and *Buck* "define[s] clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021); *see id.* (noting that "specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to

---

[1] Our decision in *Packard v. Budaj*, 86 F.4th 859 (10th Cir. 2023)—which addressed a different lawsuit arising from the same protest at issue in this case—does not advance Dennis's claim. There, we concluded "*Fogarty* and *Buck* provide notice that the use of less-lethal munitions . . . is unconstitutionally excessive force when applied to an unthreatening protester who has neither committed a serious offense nor attempted to flee." *Id.* at 869. But our analysis of *Fogarty* and *Buck* here does not contradict our analysis of those cases in *Packard*; rather, we conclude the facts of this case—in particular, Pazen's limited supervisory role and his absence from the protest—distinguish Dennis's claim from the claims in *Fogarty* and *Buck*. *See Carabajal*, 847 F.3d at 1211 ("The determination of qualified immunity remains heavily dependent on the claim in light of the unique circumstances of each case.").

the factual situation the officer confronts" (quotation and internal quotation marks omitted)).  Although "our analysis is not a scavenger hunt for prior cases with precisely the same facts," *Est. of Smart*, 951 F.3d at 1168 (quotation and internal quotation marks omitted), Dennis has not shown that *Fogarty* and *Buck*—each of which involved a boots-on-the-ground police captain giving contemporaneous orders to his officers throughout the protest—"would have put a reasonable official in [Pazen's] position on notice that his [limited] *supervisory conduct* would violate [her] constitutional rights," *Perry*, 892 F.3d at 1123 (quotation and internal quotation marks omitted).  And because we conclude Dennis has not shown that "the violative nature of [Pazen's] *particular* conduct [was] clearly established," *Est. of Smart*, 951 F.3d at 1172 (quotation omitted), her § 1983 claim for excessive force cannot withstand Pazen's qualified immunity defense, *see Est. of Taylor*, 16 F.4th at 757–58 ("The plaintiff must satisfy both prongs to overcome a qualified immunity defense." (quotation omitted)).

## III.

We REVERSE the district court's denial of Pazen's motion to dismiss and hold he is entitled to qualified immunity on Dennis's excessive force claim.

Entered for the Court


Allison H. Eid
Circuit Judge


9