**Marvin GARDNER, Plaintiff–Appellee,**

v.

**Trooper Patrick WILLIAMS, Defendant–Appellant.**

**No. 02–5363.**

United States Court of Appeals, Sixth Circuit.

Feb. 6, 2003.

Before SILER, DAUGHTREY, and COLE, Circuit Judges.

PER CURIAM.

Marvin Gardner, along with his son, Mark, and his wife, Betty, brought this action against Kentucky State Trooper Patrick Williams and others for alleged violations arising out of the arrest of Marvin and Mark on August 17, 1999. Williams arrested the two men after they refused to leave an area in which Williams was issuing a traffic citation and after Marvin refused to produce identification. Williams and the other defendants moved for summary judgment, which the district court granted except as to Marvin's claim against Williams for wrongful arrest. Williams appeals from this ruling, arguing that he is entitled to qualified immunity because there was probable cause to arrest Marvin or, in the alternative, because there was no "clearly established law" regarding the statutory requirements of the failure to disperse and disorderly conduct statutes. Because we conclude that Williams's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), we affirm the district court's decision denying Williams qualified immunity.

### FACTUAL AND PROCEDURAL BACKGROUND

Kentucky State Trooper Patrick Williams initiated a traffic stop on August

17, 1999 after he observed a motorcycle driver execute an illegal u-turn. The driver pulled over onto the private property of Joe Burke Jones, and Williams followed. On Jones's property, Marvin and Mark Gardner were sitting in a pick-up truck and talking with Jones, who was standing by the passenger-side window of the truck. Marvin had gone to speak with Jones about purchasing a car from him. Williams began a pat-down search of Jones at the front of the police car, at which time Mark backed his truck behind and perpendicular to the police car. Apparently concerned for his safety, Williams ordered the two Gardners to leave the scene, but they refused to go. After searching the motorcycle driver and his passenger, Williams repeated his request to the Gardners, and the Gardners again refused.

Williams then approached the Gardners' truck, ordering them to leave for a third time. Marvin, adamant, told Williams that he was not leaving. Williams then explained that if they did not leave he would issue each Marvin and Mark a citation for failure to disperse. To this, Marvin responded, "It ain't gonna happen, do what you got to do." Williams asked for identification from both men so that he could complete the citations. Mark immediately complied, but Marvin refused. At this point, Williams returned to his police car to request assistance and to check the motorcycle driver's identification. On his way to the police car, Williams told Jones he was free to leave.

Sheriff's Deputy Eddie Wilson, in response to Williams's request for backup, arrived on the scene and, together with Williams, arrested Marvin when he again refused to produce identification. After Marvin was arrested, Williams returned his attention to Mark, whose attorney had arrived at the scene. While Williams was issuing Mark a citation, Mark became agi-tated and was ultimately placed in a latera vascular neck restraint and arrested by Williams.

Subsequently, both Marvin and Mark Gardner were acquitted of all charges stemming from this incident. They then initiated a civil action against Williams, Captain Wayne Edwards, and Commissioner Gary Rose for alleged violations of 42 U.S.C. § 1983 and for state law claims of false arrest, assault, battery, false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and outrageous conduct. Gardner's wife brought a claim against Williams for loss of consortium.

The defendants moved for summary judgment on grounds of qualified immunity, which the district court granted except as to Marvin's § 1983 claim against Williams for wrongful arrest. Williams now appeals from the district court decision.

## DISCUSSION

### A. Standard of Review

We review a district court's denial of summary judgment on qualified immunity grounds *de novo*. *See Heggen v. Lee*, 284 F.3d 675, 679 (6th Cir.2002). Summary judgment is appropriate when there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56. In making this determination, we consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. The Privilege of Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even if an official errs in his or her judgment and violates an individual's constitutional rights, the officer is not subject to suit so long as the mistake was a reasonable one. *See Saucier v. Katz,* 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Furthermore, once a defendant asserts the privilege of qualified immunity, the burden shifts to the plaintiff "to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Flint ex rel. Flint v. Kentucky Dept. of Corrections,* 270 F.3d 340, 347 (6th Cir.2001).

To determine if qualified immunity attaches, we apply the sequential analysis set forth by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *See Greene v. Barber,* 310 F.3d 889, 894 (6th Cir.2002), *Goad v. Mitchell,* 297 F.3d 497, 501 (6th Cir.2002). As an initial matter, we must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a constitutional violation. *See Saucier,* 533 U.S. at 201. "If the answer is yes, then the second step is to determine whether the right is so 'clearly established' that a 'reasonable official' would understand that what he is doing violates that right." *Brennan v. Township of Northville,* 78 F.3d 1152, 1154 (6th Cir.1996) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

## C. Constitutional Violation

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Consistent with this guarantee, an officer may effectuate an arrest without a warrant so long as there is probable cause for the arrest. *See Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1010–11 (6th Cir.1999) (quoting *DeFillippo,* 443 U.S. at 37).

Williams contends that there was probable cause to arrest Marvin under Kentucky's failure-to-disperse law, which provides:

A person is guilty of failure to disperse if he participates with two (2) or more persons in a course of disorderly conduct likely to cause substantial harm or serious inconvenience, annoyance or alarm, and intentionally refuses to disperse when ordered to do so by a peace officer or other public servant engaged in executing or enforcing the law.

Ky.Rev.Stat. § 525.160. As explained by the district court, "[I]t appears that only Marvin and Mark were involved in the alleged failure to disperse. If so, the Gardners could not violate K.R.S. § 525.160 as the statute requires the presence of three people before a violation occurs."

■ Williams contends that the statute does not require more than two people. To support his argument, Williams directs our attention to *Kentucky Criminal Law,* written by Professors Robert G. Lawson

and William H. Fortune, in which the authors note, without citation to authority, that the statute requires proof of "participation of two or more persons." However, as the district court noted in response to Williams's motion to reconsider, the plain language of the statute mandates the presence of at least three individuals. Simply put, Williams did not have probable cause to arrest Marvin pursuant to the failure to disperse statute because Marvin and Mark were the only individuals involved in the alleged offense, and the statute requires the participation of at least three individuals.

In the alternative, Williams contends that there was probable cause to arrest Marvin for disorderly conduct. In relevant part, Kentucky law provides:

> A person is guilty of disorderly conduct when in a public place and with intent to cause public inconvenience, annoyance or alarm, or wantonly creating a risk thereof, he ... [r]efuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency.

Ky.Rev.Stat. § 525.060(1)(c). Contrary to Williams's position, however, the arrest cannot be justified by this statute because Marvin was on private property and not in a public place at the time of the arrest, and Williams's order to disperse was not made in response to "a fire, hazard, or other emergency."

Plainly, Williams did not have probable cause to arrest Marvin under the state statutes prohibiting failure to disperse and disorderly conduct. Furthermore, as noted by the district court, there does not appear to be a Kentucky statute permitting the arrest of an individual simply because he refuses to produce identification. Thus, there can be only one conclusion based on the set of facts in this case: that Williams arrested Marvin without probable cause and in violation of his Fourth Amendment rights.

## D. Clearly Established Rights

The conclusion that Williams arrested Marvin without probable cause does not end our inquiry, however, because we must also determine whether Marvin's rights under the Fourth Amendment were clearly established such that a reasonable official would have understood that his actions violated those rights. As the Supreme Court has noted. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Williams contends that the facts here do not meet that standard, pointing to the proposition in the Lawson and Fortune treatise that only two individuals are required under the failure to disperse statute. Despite the opinion of these two commentators, we conclude that no reasonable interpretation of the disorderly conduct statute could possibly support Williams's arrest of Marvin. Because the statutory language cited by Williams is unambiguous and not reasonably open to an alternative interpretation, we hold that Marvin's rights were so clearly established that a reasonable officer would have been aware of the unconstitutionality of the arrest.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.