RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RONDA RAE JONES,

*Plaintiff-Appellant*,

No. 23-1056

*v.*

STEVEN NAERT, Clinton County Sheriff Deputy,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-00371—Hala Y. Jarbou, District Judge.

Argued: July 24, 2024

Decided and Filed: November 12, 2024

Before: MOORE, MURPHY, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Mark Granzotto, GRANZOTTO LAW, P.C., Berkley, Michigan, for Appellant. Kevin J. Campbell, CUMMINGS, MCCLOREY, DAVIS & ACHO, PLC, Livonia, Michigan, for Appellee. **ON BRIEF:** Mark Granzotto, GRANZOTTO LAW, P.C., Berkley, Michigan, for Appellant. Kevin J. Campbell, CUMMINGS, MCCLOREY, DAVIS & ACHO, PLC, Livonia, Michigan, for Appellee.

BLOOMEKATZ, J., delivered the opinion of the court in which MOORE, J., joined in full, and MURPHY, J., joined in Sections I.B and II and in the judgment. MURPHY, J. (pp. 14–16), delivered a separate concurring opinion.

---

**OPINION**

---

BLOOMEKATZ, Circuit Judge.  Ronda Jones set out to walk less than half a mile from her home to check on her son, who had just been in a car crash.  She had been drinking at home while chatting with a friend on the phone.  But Officer Steven Naert, who was investigating the crash, suspected Jones had wrecked the car because she had a prior DUI arrest.  So he went to her home to question her.  As Jones tried to leave to check on her son, Officer Naert arrested her, citing a Michigan statute that prohibits "disorderly" conduct.  This qualified immunity appeal centers on whether Officer Naert had probable cause to make that arrest.  The Michigan statute does not criminalize public intoxication by itself; for Jones's arrest to be lawful, Officer Naert needed probable cause to believe that Jones would pose a danger to others by walking that short distance while intoxicated.

Contrary to the district court, we hold that Officer Naert lacked such probable cause.  But because Jones has not met her burden to show that the unlawfulness of the arrest was "clearly established," we affirm the district court's decision granting Officer Naert qualified immunity on Jones's false arrest claim.  We also affirm the district court's decision granting Officer Naert summary judgment on Jones's malicious prosecution claim because Officer Naert did not participate in the decision to prosecute Jones.

**BACKGROUND[1]**

Ronda Jones lived with her sixteen-year-old son Case in a rural community in Michigan.[2]  In the afternoon of December 3, 2019, Case was making Christmas wreaths for a Boy Scout fundraiser.  Around 4:00 p.m., he took Jones's car to deliver the wreaths.  Less than half a mile

---

[1]The events underlying this case were largely captured by police dash-cam footage and audio.  We recite the facts as depicted by the recording and construe any remaining "gaps or uncertainties" in the footage, and the facts prior to the officers' arrival at the scene, in the light most favorable to Jones, the non-moving party.  *Heeter v. Bowers*, 99 F.4th 900, 910, 912 (6th Cir. 2024).

[2]Case was a minor at the time but has since reached the age of majority, so the court identifies him by name.

from home, he swerved to avoid hitting a dog and crashed into a guardrail near a park on Wacousta Road. Lacking a cell phone, he walked home to his mom. She gave him her cell phone and instructed him to return to the car and wait for the police. She also told him that she would soon walk over to join him.

Police dash-cam footage reveals much of what happened next. While Case was away from the car, someone reported the crash, and Officer Steven Naert was dispatched to the scene at 4:51 p.m. He found the vehicle locked with deployed airbags and no driver present. He ran the vehicle's registration and saw it belonged to Jones, who he learned from dispatch had a prior drunk driving arrest. His "crystal ball" told him that Jones had driven the car while drunk, so he went to her home to investigate. Naert Footage at 13:16.

As he drove to Jones's home, Officer Naert saw Case walking back along Wacousta Road but didn't connect him to the accident. When he arrived at Jones's residence, he saw her through a window speaking on the phone at her dining table. He knocked, and Jones answered. According to his police report, Officer Naert immediately noticed Jones smelled strongly of alcohol, had "bloodshot watery eyes," and exhibited "slightly slurred speech." Op., R. 38, PageID 1261.

The interaction began on a cordial note. After confirming that she owned the car, Jones asked if Officer Naert had found her son. She explained that her son hit a guardrail while trying to avoid a dog and was just walking back to the car. Officer Naert was taken aback by Jones's claim that her son was the driver. Jones, sensing his skepticism, volunteered that she'd been on the phone with a friend for about two and a half hours. Phone records later confirmed a 128-minute call starting at 2:57 p.m.

As he probed further, Officer Naert revealed that the car's airbags were deployed—a detail Case had apparently omitted from his report to his mother. Jones grew worried when she realized that her son may have been in a serious accident and that her car may have been totaled. As Officer Naert persisted with his questioning, she told him, in a raised voice, to "go right now and get [her] goddamn kid who's on the road." Naert Footage at 24:21–24:25. She then asked him for his name and badge number, which he provided.

At this point, Officer Naert bluntly stated his theory: "I'm guessing that you were drunk and driving your car because you're heavily intoxicated." *Id.* at 25:00–25:05. Jones insisted her son was the driver, but Officer Naert didn't believe her. He responded, "If you have your son say that he was driving, there's going to be an issue." *Id.* at 25:07–25:10. Jones tried to disengage from the conversation, but Officer Naert reiterated his accusation. Jones again told him that he was wrong. Eventually, she told him to "get the hell out of [her] house." *Id.* at 26:24–26:26.

As Officer Naert was leaving in his patrol car, Jones exited her home and began walking down her long driveway, intending to join her son at the accident scene as she had told him she would. Officer Naert warned her several times not to walk "down the road" while intoxicated or he would arrest her. *Id.* at 27:23–28:00. Jones questioned the basis for an arrest and continued walking down her driveway, saying she wanted to check on her son. Officer Naert kept yelling for Jones to "go back inside." *Id.* She didn't. And the moment she walked off her driveway, Officer Naert told her she was under arrest.

Jones resisted arrest by refusing Officer Naert's order to put both hands behind her back. In a clear and steady voice, she repeatedly asked Officer Naert to "listen to [her]" as she expressed concern about her son's safety. *Id.* at 28:17–29:34. With a grip on one arm, Officer Naert guided her toward his patrol car and pushed her onto the hood. Jones continued to keep her other arm away, so he threw her to the ground in a facedown prone position and secured both hands behind her back. He then repeatedly asked if she would willingly stand up and walk to his squad car. Jones responded that if he continued to physically hurt her, she would continue to resist arrest. Eventually, Sergeant Daniel Spitzley arrived to assist. He and Officer Naert brought Jones to her feet and into the patrol car.

Once Jones was secured in the car, Officer Naert turned to Sergeant Spitzley to describe what had happened. But as soon as he began talking, both officers turned off their audio recording (from the dash-cam, we can see the officers talking). The audio resumes about two minutes later, with Sergeant Spitzley stating his view that Case had driven the car. The driver's seatbelt, he explained, fit Case snugly and would not have fit Jones's larger frame. Officer Naert then took Jones first to the accident scene and then to county jail.

Jones was charged with being a "disorderly person" under Michigan law, a crime more commonly referred to as "disorderly conduct." *See* Mich. Comp. Laws § 750.167(1)(e). That statute, as relevant here, prohibits being intoxicated in public while acting in a manner that "endanger[s] directly" the safety of others or property. *Id.* Jones was also charged with resisting and obstructing a police officer in the lawful discharge of his duties. *See id.* § 750.81d. The jury acquitted her on both charges.

Jones sued Officer Naert under 42 U.S.C. § 1983, alleging that he violated her Fourth Amendment rights against false arrest and malicious prosecution.[3] She also asserted several claims under Michigan law. Officer Naert raised qualified immunity in defense, and the parties cross-moved for summary judgment.

The district court granted Officer Naert qualified immunity on the federal claims. It held that he had probable cause to arrest Jones for disorderly conduct, and in the alternative, the unlawfulness of the arrest was not clearly established. Since the underlying arrest for disorderly conduct was lawful, Jones also had no right to resist the arrest. The court similarly dismissed the malicious prosecution claim based on its decision that the arrest was supported by probable cause, and alternatively because Officer Naert did not influence or participate in the decision to prosecute Jones. After dismissing the Fourth Amendment claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. Jones now appeals.

**ANALYSIS**

For this appeal, we must determine whether Officer Naert is entitled to qualified immunity on Jones's Fourth Amendment claims for false arrest and malicious prosecution. We review de novo the district court's grant of summary judgment on a qualified immunity defense. *See Helphenstine v. Lewis County*, 60 F.4th 305, 314 (6th Cir. 2023). Summary judgment is appropriate unless a "genuine dispute as to any material fact" precludes the defense. Fed. R. Civ. P. 56(a); *see also Wilkerson v. City of Akron*, 906 F.3d 477, 481 (6th Cir. 2018). An official is entitled to qualified immunity at summary judgment if, viewing the facts in the light most

---

[3]Strictly speaking, Jones sued Officer Naert for both unreasonable search and seizure and arrest without probable cause. But given the factual and legal overlap between those two claims in this case, the district court analyzed them together as a single claim for false arrest. Jones adopts that approach on appeal, and so do we.

favorable to the plaintiff, the official's conduct did not violate "clearly established . . . constitutional rights of which a reasonable person would have known." *Jackson v. City of Cleveland*, 64 F.4th 736, 745 (6th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The burden is on Jones to show that (1) Officer Naert violated her constitutional rights, and (2) at the time of the violation, it was "clearly established" that his conduct violated the Constitution. *Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024). We may answer those questions "in any order," *Jackson*, 64 F.4th at 745, but addressing both is "often beneficial" for the "development of constitutional precedent," particularly on issues that mainly arise in a qualified immunity defense. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014) (quoting *Pearson*, 555 U.S. at 236).

Following this framework, we consider Jones's false arrest and malicious prosecution claims in turn.

## I.     False Arrest

### A.     Probable Cause

We begin by determining whether Officer Naert violated Jones's Fourth Amendment rights by arresting her without probable cause. *See Akima v. Peca*, 85 F.4th 416, 422–23 (6th Cir. 2023). An officer has probable cause for an arrest if the "facts and circumstances within the officer's knowledge" would lead a reasonable officer to believe that the suspect "has committed, is committing, or is about to commit an offense." *Goodwin v. City of Painesville*, 781 F.3d 314, 333 (6th Cir. 2015) (citation omitted). In assessing probable cause, we look to the "totality of the circumstances" confronted by the officer at the time of the arrest. *Akima*, 85 F.4th at 423 (citation omitted). Because probable cause is an objective standard, we require "concrete" and "articulable facts" from which an officer can reasonably infer criminal conduct. *McCurdy v. Montgomery County*, 240 F.3d 512, 517, 519 (6th Cir. 2001), *abrogated on other grounds by Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006). We do not consider the events that occurred after the arrest or the officer's subjective intent. *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002).

Here, Officer Naert arrested Jones for disorderly conduct and for resisting arrest. Jones does not dispute that she resisted arrest. But under Michigan law, Jones had a right to resist if Officer Naert lacked probable cause to apprehend her in the first place. *See People v. Moreno*, 814 N.W.2d 624, 628–29 (Mich. 2012). Our analysis, then, focuses only on whether there was probable cause for Officer Naert to arrest Jones for disorderly conduct.

For that inquiry, we ask whether a reasonable officer would believe that Jones was (1) "intoxicated," (2) "in a public place," and (3) "endangering directly the safety of another person or of property." Mich. Comp. Laws § 750.167(1)(e). The first two prongs are not in dispute. Jones concedes that she was intoxicated in public within the meaning of the statute. The only question before us is whether Jones would have presented a probable risk of danger to others or property had Officer Naert allowed her to walk the half-mile distance along Riverside Drive and Wacousta Road from her home to the scene of the accident. Based on the totality of the circumstances, the answer is no.

Our analysis starts with a point of agreement: Officer Naert did not have probable cause to arrest Jones solely because she was inebriated in public. "Public intoxication is not a civil or criminal offense in Michigan." *Cartwright v. City of Marine City*, 336 F.3d 487, 494 (6th Cir. 2003). Decades ago, Michigan did prohibit public intoxication per se. But the legislature amended the statute to include the element of endangerment at issue here while expressly preempting any local laws penalizing public intoxication alone. *See People v. Kretchmer*, 272 N.W.2d 558, 560 (Mich. 1978) (per curiam); Mich. Comp. Laws § 330.1286(1), (4). This legislative change reflected the state's "judgment that public intoxication is so substantially different from conduct generally covered by the criminal law that it should not be a criminal offense at all." *Kretchmer*, 272 N.W.2d at 560. It is endangerment, then, that transforms lawful public intoxication into a crime. Accordingly, intoxication, without any further reasonable basis for believing that a person may endanger another, is not enough to arrest them for disorderly conduct.

The circumstances here show that Jones was intoxicated, but not that she would pose a danger to others by walking the half mile to the scene of her son's accident. While Jones may have been drinking throughout the afternoon, the evidence does not indicate that Jones was so

impaired that she would likely enter the roadway or stumble into traffic, thus endangering passing drivers.  By his own account, Officer Naert observed no signs that Jones was staggering, stumbling, or unsteady in her gait, and the dash-cam video does not suggest otherwise.  From what we can see in the video, Jones is steady on her feet.  She appears alert, and her speech is not obviously slurred or incoherent.  She was calm and measured at first and grew agitated only in the face of Officer Naert's repeated false accusations that she crashed the car while driving drunk and after learning that her son may have been in an accident more serious than she had thought. *See Scheffler v. Lee*, 752 F. App'x 239, 247 (6th Cir. 2018).  And although Officer Naert stated that Jones was swearing and screaming at him as she walked down her driveway and neared his car, the video reflects that this statement was inaccurate.[4]

The record further shows that Jones was not attempting to engage in particularly dangerous activity by walking to check on her son.  In Jones's residential neighborhood, there were no sidewalks, but we can see from the video that there was ample room for her to walk on the side of the road.  Michigan law allows pedestrians to walk on the left side of roads with no sidewalk while facing incoming traffic, which is what Jones was attempting when she was arrested.  *See* Mich. Comp. Laws § 257.655.  And Jones's actions were not unusual—Officer Naert testified that he often saw pedestrian traffic on that part of Wacousta Road.  What's more, while Wacousta Road does have a narrow shoulder, the dash-cam footage confirms that grassy areas bordered the shoulder along Jones's route leaving plenty of space to walk without disrupting the modest vehicular traffic on the road.  So, while Jones may have been intoxicated, the record—particularly construing it in the light most favorable to her—does not show that a reasonable officer in Officer Naert's shoes would have believed she was unsteady and "about to" stumble into the street or was otherwise unable to safely complete this half-mile walk in her residential neighborhood to check on her son. *Goodwin*, 781 F.3d at 333.

---

[4]Jones's after-the-fact admission that she had consumed approximately half a magnum-sized bottle of wine—i.e., about a normal-sized bottle—in the five hours prior to the incident was not known to Officer Naert at the time of the arrest. *See Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) ("[Our] analysis . . . is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question." (cleaned up)).  And the potential effect of that amount of consumption over five hours, considering Jones's physical attributes like her weight and tolerance, is a factual issue we cannot resolve.

Officer Naert counters that the confluence of the circumstances—Jones's intoxication, her dark attire, the narrow shoulder on the two-lane road, and the limited lighting in the early evening—suffices for probable cause that Jones would endanger passing drivers. The district court likewise concluded that Officer Naert "did not have to wait for [Jones] to walk in the road" or "in front of a vehicle," before arresting her for disorderly conduct. Op., R. 38, PageID 1270.[5]

But the evidence, especially when viewed in the light most favorable to Jones, did not show she was likely to walk in the road. And Michigan law demands that type of "concrete" evidence: cases that find probable cause under similar circumstances consistently involve an observable physical impairment, an affirmative act of endangerment, or both. *E.g., People v. Evans*, No. 353922, 2022 WL 626985, at *5 (Mich. Ct. App. Mar. 3, 2022) (per curiam) (refusing to walk on shoulder when ordered and stumbling and lying down in unilluminated traffic lane instead); *People v. Farnsworth*, No. 342225, 2019 WL 286555, at *3 (Mich. Ct. App. Jan. 22, 2019) (per curiam) (exhibiting confrontational behavior and staggering in and out of street with "fair amount of traffic"). In *People v. Sparks*, upon which the district court relied, the danger to others was obvious; the arrestee was so intoxicated that he was apparently passed out on the side of the road, and a driver reported having to drive around him to avoid hitting him. No. 337148, 2018 WL 3074056, at *1 (Mich. Ct. App. June 21, 2018) (per curiam).

No such facts were present for the arrest here. Jones neither had an observable physical impairment—Officer Naert admits she walked with a steady gait—nor did she take an affirmative act of endangerment in attempting to walk on the side of a road with frequent foot traffic (or on the undisputed adjacent grassy area). Her actions, therefore, were akin to any person who had a few too many and decided to walk home from a friend's house, a local bar, or a sporting event. Of course, in any of those scenarios there's some risk that a passing vehicle might not see a pedestrian on the side of the road in the early evening, irrespective of the walker's level of intoxication. And there's always a risk that an intoxicated person might stumble—sidewalk or not—and hurt others, fall in the road, or break something. But these

---

[5]In evaluating probable cause, the district court erroneously considered whether Jones's conduct endangered herself as well as others. The Michigan statute covers only those acts that endanger others, so whether Jones endangered herself is irrelevant.

everyday risks hardly resemble what the law envisions as drunk and disorderly conduct. *See McCurdy*, 240 F.3d at 515–16, 519 (without more, drunken loitering before daylight did not present a danger to anyone under analogous Ohio statute); *People v. Reynolds*, No. 310781, 2012 WL 6097341, at *1–3 (Mich. Ct. App. Dec. 6, 2012) (per curiam) (running while drunk in poorly lit parking lot at night did not present a danger under Michigan statute).

In *McCurdy v. Montgomery County*, we held that an officer could not arrest someone under a similar Ohio statute based on general risks that are inherent to being drunk in public. McCurdy was outside in a residential neighborhood at 5:00 a.m., conversing with his friends after a long night of drinking. 240 F.3d at 515–16. Once approached by the officer, he used profane language, challenged the officer's authority, and refused to display identification. *Id.* On appeal, we recognized that the officer had probable cause to believe McCurdy was intoxicated. *Id.* at 518. And that fact alone may have created some risk that McCurdy would "get in a fight" or "stagger into the street." *Id.* at 522 (Engel, J., dissenting). But because Ohio, like Michigan, does not criminalize public intoxication, such general risks could not justify McCurdy's arrest. *Id.* at 519 (majority opinion). And apart from those risks, no "objective and articulable facts" suggested that McCurdy posed a danger to anyone, so his arrest for disorderly conduct was unlawful. *Id.*

Similarly, here, we decline to adopt a rule that would turn common risks into probable cause for arresting a "disorderly person." Accordingly, we hold that Officer Naert lacked probable cause to believe that Jones was about to directly endanger others, and violated her constitutional rights by arresting her for disorderly conduct.

### B.    Clearly Established Law

We next consider whether the unlawfulness of this arrest was clearly established in December 2019. If it wasn't, Officer Naert is still entitled to qualified immunity from Jones's § 1983 claims whether or not he violated the Constitution. *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 302 (6th Cir. 2019). A right is clearly established if its contours are definite enough "that any reasonable official in the defendant's shoes would have understood that he was violating it." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020) (quoting

*Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam)). In the context of probable cause, the plaintiff must normally identify a case where an officer "acting under similar circumstances" was deemed to have violated the Fourth Amendment. *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (citation omitted). Barring that, the plaintiff must show that her claim presents one of those "rare 'obvious case[s]'" where no existing precedent is needed. *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).

We do not consider whether Jones's rights were clearly established under existing precedent because Jones disclaims any argument on that front. Instead, she argues that Officer Naert's conduct was "obviously" unlawful in light of the statutory language at issue here. Appellant Br. at 37; Oral Argument Tr. at 6:44–6:55. While we have held that a criminal statute can by itself put an officer on notice of an unconstitutional arrest, we have done so when the statute clearly addressed the specific circumstances confronted by the officer. *See Gardner v. Williams*, 56 F. App'x 700, 704 (6th Cir. 2003). For example, in reviewing an arrest under a failure-to-disperse statute that explicitly requires a crowd of at least three people, we held that an officer clearly lacked probable cause for an arrest when he was faced with only two people, which defeated qualified immunity. *Id.* While statutory language need not be that precise to establish a right, Jones does not explain how the element at issue—"endangering directly" other persons or property—by itself offers sufficiently clear guidance for her specific situation. Jones thus fails to show that the statute "clearly established" her rights in this case.

Jones also contends that the arrest was "clearly" unlawful because Officer Naert acted with an improper motive. She argues that Officer Naert did not believe that she would endanger others by walking along the road, but instead sought to prevent her from colluding with her son. And she points to the fact that Officer Naert and Sergeant Spitzley both turned off their audio recording for about two minutes to discuss her arrest as proof that Officer Naert knew he was violating her rights. While we agree that the audio blackout may raise eyebrows, both our probable cause and qualified immunity doctrines take an objective view. *See Baynes v. Cleland*, 799 F.3d 600, 610–11 (6th Cir. 2015); *Haynes*, 301 F.3d at 678. Officer Naert's subjective intent thus has no bearing on our analysis.

Because Jones has not carried her burden to show that her right was clearly established in these circumstances, Officer Naert is entitled to qualified immunity on Jones's false arrest claim.

## II.    Malicious Prosecution

We now turn to Jones's Fourth Amendment claim for malicious prosecution.  For this claim, Jones has to prove that (1) Officer Naert "made, influenced, or participated in the decision to prosecute" Jones; (2) the government lacked probable cause; (3) the proceeding caused Jones to suffer a deprivation of liberty; and (4) the prosecution ended in Jones's favor.  *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (cleaned up).  Neither party appears to dispute the presence of the third and fourth factors.  And even if Naert lacked probable cause, that still leaves us with the first factor: did Jones raise a triable issue as to whether Officer Naert "made, influenced, or participated" in the decision to prosecute her?  We agree with the district court that she has not.

Under our precedent, an investigating officer can be liable for a prosecutor's decision to prosecute if the officer "influenced or participated" in that decision.  *Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020) (citation omitted).  We have recognized that giving the prosecutor reports or other investigative materials that contain "falsehoods, omissions, or misstatements" may "constitute participation."  *Id.*  But this rule applies only if the falsehoods or misstatements were both "material, or necessary" to the prosecution and made "knowingly and deliberately, or with a reckless disregard for the truth."  *Sykes*, 625 F.3d at 305, 312.

Jones argues that Officer Naert satisfies this participation standard because his incident report contained inaccurate statements, as revealed by the footage from her arrest.  The specific statement she points to is Officer Naert's recounting that she "began yelling and screaming a tirade of obscenity-laced statements" after he told her to go back inside.  Appellant Br. at 40–41 (quoting R. 20-2, PageID 256).  But Jones presented no evidence that this statement, even if false, "influenced the ultimate decision" to prosecute her.  *See Jones v. City of Elyria*, 947 F.3d 905, 918–19 (6th Cir. 2020).  Notably, the trial court in Jones's state criminal proceeding explicitly disclaimed any reliance on the challenged statement as relevant to its probable cause determination.  And more broadly, the prosecution had access to the footage and could

independently assess the veracity of Officer Naert's incident report, including his claim that Jones was yelling and screaming as she walked down her driveway.  Accordingly, we affirm the district court's dismissal of this claim.

**CONCLUSION**

For these reasons, we affirm the district court's judgment granting Officer Naert qualified immunity on Jones's false arrest and malicious prosecution claims.

_____

**OPINION**

_____

MURPHY, Circuit Judge, concurring in part and concurring in the judgment.  I agree with much of Judge Bloomekatz's opinion, but I would resolve part of this appeal on narrower grounds.  To overcome Officer Steven Naert's qualified-immunity defense, Ronda Jones must show not just that Naert violated the Constitution but also that the existing law clearly established this violation.  *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).  And we may decide these two qualified-immunity elements in the order that makes the most sense for the case.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Jones brings both a "false arrest" claim and a "malicious prosecution" claim under the Fourth Amendment.  I am comfortable deciding Jones's malicious-prosecution claim on the constitutional merits for the reasons that Judge Bloomekatz provides.  But I would not resolve whether Naert had probable cause to arrest Jones for her false-arrest claim.  Rather, I would jump straight to the second qualified-immunity element: Naert did not violate clearly established law by concluding that he had probable cause to arrest Jones.  *See Beck v. Hamblen County*, 969 F.3d 592, 598–99 (6th Cir. 2020).  As Judge Bloomekatz explains, Jones has not cited any on-point cases covering this unique factual situation.  *See Wesby*, 583 U.S. at 64.  Nor is this case an "obvious" one in which the plaintiff does not need to identify analogous precedent.  *Id.* (citation omitted).

I see little value in deciding whether Naert actually had probable cause to arrest Jones because this federal probable-cause inquiry largely turns on an unclear state-law question.  Naert arrested Jones under Michigan's "disorderly person" statute.  Mich. Comp. Laws § 750.167(1).  This statute treats as "a disorderly person," among other individuals, one "who is intoxicated in a public place and who is . . . *endangering directly* the safety of another person or of property[.]"  *Id.* § 750.167(1)(e) (emphasis added).  An inebriated individual "endangers" another person's safety or that person's property if the individual "expose[s]" the person or property "to harm or danger" or "imperil[s]" the person or property.  *American Heritage Dictionary of the English Language* 588 (5th ed. 2011).  Under this language, a defendant can violate the statute even if no

harm occurs to the other person or property. Rather, the statute makes the *risk* of harm the critical fact. So a drunken bar patron need not actually start landing punches to violate the statute; she can instead violate the statute if her belligerent and "erratic behavior" creates a risk of that violence. *See People v. Brilinski*, 2021 WL 1478348, at *3 (Mich. Ct. App. Apr. 15, 2021) (per curiam).

But risks come in differing degrees. A heavily intoxicated person who unwittingly stumbles onto an expressway creates a grave risk of a harmful accident. Yet even a perfectly sober jogger creates some risk of an accident if the jogger runs along a road's shoulder while dressed all in black late at night. Many conscientious joggers thus wear reflective clothing or lights during nighttime runs.

So what *degree* of risk suffices to violate this Michigan statute? The Michigan Supreme Court has not answered that question. And the Michigan courts of appeals have offered only limited guidance. They have upheld convictions in cases involving greater risks of harm. In one case, a belligerent defendant refused to stop "walking in the roadway" and "at one point [lay] down in the travel lane." *People v. Evans*, 2022 WL 626985, at *1, *5 (Mich. Ct. App. Mar. 3, 2022) (per curiam). In another, an equally belligerent defendant kept going "in and out of the street" near a bar. *People v. Farnsworth*, 2019 WL 286555, at *3 (Mich. Ct. App. Jan. 22, 2019) (per curiam); *see also People v. Sparks*, 2018 WL 3074056, at *1 (Mich. Ct. App. June 21, 2018) (per curiam). While these courts found these greater risks sufficient to convict the defendant (or establish probable cause), they did not suggest that lesser risks would fall outside the statute.

Keep in mind, too, that Naert did not need conclusive proof that Jones had violated this state law. To establish probable cause under the Fourth Amendment, he needed only "a probability or substantial chance" that Jones had or would do so. *Wesby*, 583 U.S. at 57 (citation omitted). And because the Michigan law also punishes a risk of harm, we must ask whether a probability of a probability existed. Yet without a good grasp of the first (state-law) probability, I find it difficult to evaluate the second (federal-law) one.

In this situation, the Supreme Court has suggested that we should just resolve the appeal at step two of the qualified-immunity analysis. "A constitutional decision resting on an uncertain

interpretation of state law," the Court has said, is "of doubtful precedential importance." *Pearson*, 555 U.S. at 238. Given that any probable-cause holding will rest on our "uncertain assumptions about state law," that holding may well lose value if the state's highest court takes a different view of the underlying state law. *Id.* (citation omitted). I would follow the Court's reasoning here. I thus join Sections I.B and II of the majority opinion and otherwise concur in the judgment.